**Toney D. JONES, Appellant–Plaintiff,**

v.

**Janet JONES, Appellee–Plaintiff,**

**Robinson Farms, Inc., Defendant (Not Participating in this Appeal).**

No. 42A01–9403–CV–93.

Court of Appeals of Indiana, First District.

Oct. 19, 1994.

Timothy R. Dodd, Evansville, for appellant.

Russell T. Clarke, Jr., Emswiller, Williams, Noland, Clarke, P.C., Indianapolis, for appellee.

ROBERTSON, Judge.

Plaintiff–Appellant, Toney D. Jones [Father], appeals the trial court's allowance of certain litigation expenses and the allocation of the settlement proceeds in favor of Plaintiff–Appellee, Janet Jones [Mother], in Father's and Mother's lawsuit against Robinson Farms, Inc. for the wrongful death of their son, Jesse. Father raises three issues, which we restate and consolidate into two, neither of which constitute reversible error.

## FACTS

The facts in the light most favorable to the trial court's judgment reveal that the parties' eight year-old son, Jesse, was killed in a 1991 farming accident at Robinson Farms, Inc., a

farm owned by Mother's father. The parents had been divorced in 1985. Mother had been awarded custody of Jesse subject to Father's reasonable visitation.

The parents brought suit against Robinson Farms, Inc. Each parent hired counsel and had agreed that the reasonable costs of the litigation, including attorney fees, would be shared pro rata based on the parties' respective shares of any recovery. Less than thirty days before the scheduled trial, the claim was settled for $175,000.00 and Robinson Farms, Inc. was dismissed from the lawsuit. The parents then litigated the apportionment of their relative losses (and thus the division of the net settlement proceeds) as contemplated under Ind.Code 34–1–1–8(h)(2).

The parties had agreed that approximately $12,000.00 in litigation expenses were reasonable and should be paid out of the settlement proceeds as provided under the agreement to share litigation expenses on a pro rata basis. However, Father challenged the reasonableness of an additional expense of approximately $6,000.00 incurred by Mother, billed by Lawyers Consulting Services, Inc. [LCS], a wholly-owned subsidiary of the law firm that represented Mother. LCS prepared the settlement brochure utilized in the settlement negotiations. Robinson Farm's insurer had initially denied liability. No offer of settlement had been made before Defendant had been presented with the settlement brochure prepared by LCS. An employee of LCS, a former police chief and graduate of the FBI National Academy, conducted an extensive investigation of the accident which had claimed Jesse's life. This investigator had interviewed several witnesses, including the police officer involved with the investigation, Jesse's baseball coach, Mother's friends, farm workers, Jesse's teacher, and the coroner. Another employee of LCS, a lawyer, utilized the information obtained by the investigator in the preparation of a settlement brochure. At trial, both above-mentioned LCS employees testified that the amounts charged for their services were reasonable.

## DECISION

### I.

Whether the trial court erred in entering judgment allocating responsibility for the payment of Lawyer's Consulting Services, Inc.?

As noted above, Father disputed the reasonableness of, and refused to share responsibility for, the bill from LCS. After trial, the trial court ordered that the parties were to share responsibility for the LCS bill on the agreed upon pro rata basis, finding that to require Mother to be entirely responsible for this "expense in securing the joint judgment against the defendant would be unconscionable and a matter of unjust enrichment to [Father]."

Father asserts the trial court's jurisdiction in the present action, brought under I.C. 34–1–1–8(h)(2), was limited to the allocation of the settlement proceeds. Thus, reasons Father, the trial court had no authority to order that he be responsible for a portion of the disputed litigation expenses. Also, Father argues that, while he agreed to a pro rata sharing of reasonable attorney fees, he did not agree to share the responsibility for the bill from LCS, which had been hired solely on Mother's behalf. Father argues Mother should be responsible for all of LCS's bill.

■ Under Ind.Trial Rule 18(A), the trial court is vested with broad discretion in deciding whether claims should be joined together, or severed for separate trials as provided under T.R. 41(B). *McCoy v. Like* (1987), Ind.App., 511 N.E.2d 501, *trans. denied*. Once a person is properly made a party, then the joinder of claims is unfettered. *Id.* Finally, courts have the inherent power to do all that is necessary to carry out their purpose of administering justice. *Ulrich v. Beatty* (1966), 139 Ind.App. 174, 216 N.E.2d 737.

■ The parents' dispute regarding the LCS litigation expense is in the nature of contract dispute, arising out of the parties' agreement to share the reasonable litigation expenses incurred in securing a judgment against the defendant. The trial court had the authority and abused no discretion in hearing and resolving this dispute in conjunction with the parents' dispute regarding the allocation of the settlement proceeds. More-

over, the evidence reveals the LCS expenses were reasonable and contributed toward the acquisition of the settlement. Therefore, we find no error.

## II.

Whether the trial court erred in dividing the settlement proceeds 65–35 in favor of Mother?

Indiana Code 34–1–1–8, which governs the present action, reads as follows (pertinent part only):

(e) In an action to recover for the death of a child, the plaintiff may recover damages:

(1) for the loss of the child's services;

(2) for the loss of the child's love and companionship; and ...

\* \* \* \* \* \*

(g) Damages awarded under [this chapter] inure to the benefit of:

(1) the father and mother jointly if both parents had custody of the child;

(2) the custodial parent ... and the non-custodial parent of the deceased child as apportioned by the court according to their respective losses; ...

■ This is a case of first impression in Indiana. A majority of jurisdictions allocate the proceeds for the wrongful death of a child between divorced (or unmarried) parents on a fact specific basis of subjective relationship and dependency. Rhodes, *Abandoning Parents Under Intestacy: Where We Are, Where We Need To Go*, 17 Ind.L.R. 516, 521 (1994). Louisiana courts have held that the assessment of damages between divorced parents for the wrongful death of a child depends on the peculiar set of facts and circumstances in each case, and the trial court is afforded broad discretion in allocating damages. *Simmons v. Whittington* (1984), La.App., 444 So.2d 1357, *writ denied.* Louisiana courts have upheld awards in favor of the custodial parent. *Id.; Ogaard v. Wiley* (1975), La.App., 325 So.2d 642 (Custodial parent had "special" relationship with deceased child).

In the present case, the trial court entered the following finding justifying a 65–35 split

of the net settlement proceeds in favor of Mother:

There is no doubt in the judge's mind that both parents shared an equal love for their son and loss of that love was equally devastating to each of them. IC 34–1–1–8(e)(2) states that the plaintiffs may recover damages for 'the child's love and companionship.' As testified by [Mother's doctor], [Mother] had a 'highly intensified relationship' with Jesse and will need future professional counselling to put this loss in perspective in relationship to her future. This was confirmed by [Mother's] testimony and reactions on the witness stand. [Father] also had a strong relationship with Jesse, again as indicated by his testimony and reactions. He also will need future counseling to accept his loss and complete his grieving. Under certain circumstances, the judge's life experience enters into his conclusions about subjective matters in a particular case. In order to really understand the loss of a child's love and companionship, one must have personally experienced the loss. This judge has had that experience, [and] therefore feels qualified to make those subjective conclusions. Where there is a loving relationship between parents and child and the child is lost, some difference in the emotional make-ups of the human female and male causes the mother to experience more heightened or intense feelings of abandonment and unjustified guilt. It further stands to reason that those feelings are more intensified in situations where she and the child's father are separate. On the other hand, the father's feelings of loss are buried more deeply in the psyche and are likely to require more time to rationalize.

Father argues the 65–35 split is not supported by the evidence and that the trial judge erred by substituting his personal experience for the evidence presented at trial.

In the present case, neither party requested the trial court to enter specific findings of fact pursuant to Ind.Trial Rule 52. In such a case, a general finding or judgment will control as to issues upon which the trial court has not expressly found, and special findings

will control only as to those issues which they cover. *Quebe v. Davis* (1992), Ind., 586 N.E.2d 914. Special findings will be reversed on appeal only if they are clearly erroneous. *Id.* A general judgment will be affirmed upon any legal theory consistent with the evidence, and the court of review neither reweighs the evidence nor rejudges the credibility of the witnesses. *Id.* Moreover, when reviewing a general judgment, we presume that the trial court correctly followed the law. *Turpen v. Turpen* (1989), Ind.App., 537 N.E.2d 537. The presumption that the trial court correctly followed the law is one of the strongest presumptions applicable to our consideration of a case on appeal. *Baker v. Baker* (1986), Ind.App., 488 N.E.2d 361.

The trial court's judgment is supported by sufficient evidence of probative value. As the custodial parent, Mother spent more time with Jesse than did Father. Under I.C. 34–1–1–8(e)(2), the loss of a child's companionship is one element of damages recoverable in a wrongful death action. Thus, Mother's loss, in terms of the loss of Jesse's companionship, was greater than Father's. Therefore, the trial court's allocation of damages under I.C. 34–1–1–8(h)(2) is not clearly erroneous, and we find no error.

Judgment affirmed.

BAKER and NAJAM, JJ., concur.