**David L. CLARK and Aaron Clark d/b/a Clark Electric Company, Appellants–Plaintiffs,**

v.

**Theresa K. HUNTER, Appellee–Defendant.**

No. 18A05–0606–CV–308.

Court of Appeals of Indiana.

Feb. 26, 2007.

Gregory B. Smith, Smith Law Office, P.C., Muncie, IN, Attorney for Appellants.

Brian M. Falcon, Kimberly L. Cohen, Drewry Simmons Vornehm, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

David Clark and Aaron Clark, doing business as Clark Electric Company (collectively, "Clark"), appeal from the trial court's order failing to enter a decree of foreclosure on a mechanic's lien and a

judgment of attorney's fees from Theresa Hunter. Clark raises four issues for our review, namely:

1. Whether the evidence supports the judgment.
2. Whether the trial court should have awarded prejudgment interest.
3. Whether the trial court erred in not foreclosing on Clark's mechanic's lien.
4. Whether Clark was entitled to attorney's fees.

We affirm in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

Clark is in the business of providing electrical contracting services. In November of 2002, Hunter, acting as the general contractor for the construction of her house, asked Clark to submit a bid on the electrical portions of the construction. Hunter provided Clark with blueprints, and Clark mailed a bid to Hunter. The proposal called for a total payment from Hunter to Clark of $7,380, to be paid in two installments of $3,690. The first installment was to be made at the "completion of electrical rough in," Appellant's App. at 15, and the second installment was to be made upon final completion. Hunter accepted the proposal.

Construction proceeded and in June of 2003 Hunter paid the first installment as agreed, including extra payment for additional work performed by Clark. In October, Hunter sent Clark a letter requesting that Clark complete its services in a timely manner, but Clark did not return until late December. Also in December, Hunter informed Clark that she would not pay for Clark's services until a final inspection was completed. Shortly thereafter, Hunter brought in an inspector to review Clark's work. The inspector "raise[d] ... objections" to the work. Transcript at 112.

On January 12, 2004, Clark filed a notice of its intent to hold a mechanic's lien. On December 28, 2004, Clark filed suit for breach of contract and to foreclose on its lien. Clark sought to recover $3,865, together with attorney's fees totaling $3,109.20, costs, and prejudgment interest. On February 24, 2005, Hunter filed her Answer and a Counterclaim alleging breach of contract by Clark. On July 19, Hunter filed a petition to discharge the lien, which the trial court denied. On November 18, the court held a bench trial.

At the trial, Hunter's expert, William D. Keller, testified that he had reviewed the contract and found Clark's work to be deficient in a number of areas. Specifically, Keller found Clark's work inadequate in the following areas: outdoor lamp posts were not of proper height; the light fixture on the front porch was missing a trim piece and material from the soffit; a ground fault interrupter was missing from the kitchenette; there was an inadequate number of outlets in the laundry room, porch area, mechanical room, main hallway, and the northeast bathroom; a ground fault outlet had not been installed near the utility sink; there was a missing cover plate in the sauna room; covers were missing on the outlets installed for the garage door openers; there was a missing ground fault outlet near the wet bar; smoke detectors had been improperly installed; circuit breakers were not labeled; service for sufficient amperage was not being provided; and no arc fault breakers were installed in the bedroom areas. A number of those deficiencies also constituted violations of the National Electric Code, contrary to the terms of Clark's contract with Hunter.

On December 6, the trial judge issued its order, stating in relevant part:

5. That plaintiffs' [Clark's] complaint alleges two counts, Count 1 based on breach of contract and Count 2 on foreclosure of mechanic's lien.

6. That the plaintiffs refused to complete the work on defendant's [Hunter's] property until paid in full.

7. That the defendant did pay the sum of $4,689.00 to plaintiffs in June of 2003 but refused to pay an additional $3,865.00 because the work was not completed to her satisfaction.

8. That the Court would note that the Judge of this matter was previously involved in the building business and that as presented, it appears that 80% of the work was completed by and for defendant.

9. That the agreement that the parties entered into was breached upon breach of contract, and that plaintiffs should recover from the defendant the sum of $2,952.00.

10. That the agreement contained no provision for interest.

IT IS, THEREFORE, CONSIDERED, ORDERED, ADJUDGED AND DECREED BY THE COURT that the plaintiffs should have and recover a judgment from the defendant ... in the amount of $2,952.00 plus court costs.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED BY THE COURT that the defendant take nothing by way of her counter-claim.

Appellant's App. at 9–10. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

█ The trial court issued, although neither party requested, specific findings of fact pursuant to Indiana Trial Rule 52. In such a case, a general finding or judgment will control as to issues upon which the trial court has not expressly found, and special findings will control only as to those issues that they cover. *Jones v. Jones*, 641 N.E.2d 98, 100 (Ind.Ct.App. 1994). Special findings will be reversed on appeal only if they are clearly erroneous. *Id.* Findings are clearly erroneous only when a review of the record leaves us firmly convinced that a mistake has been made. *Harbours Condo. Ass'n v. Hudson*, 852 N.E.2d 985, 989 (Ind.Ct.App.2006). A judgment is clearly erroneous when the findings of fact and conclusions thereon do not support it, and we will disturb the judgment only when there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* A general judgment, on the other hand, will be affirmed upon any legal theory consistent with the evidence. *Jones*, 641 N.E.2d at 100. The court of review neither reweighs the evidence nor judges the credibility of the witnesses. *Id.*

█ Further, to the extent that Clark did not receive the entire amount it sought at trial and now seeks on appeal, we note that it is appealing from a negative judgment. A party who had the burden of proof at trial appeals from a negative judgment and will prevail only if it establishes that the judgment is contrary to law. *Hudson*, 852 N.E.2d at 989. A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to only one conclusion but the trial court reached a different conclusion. *Id.*

### Issue One: Sufficiency of Evidence

Clark first contends that the trial judge committed reversible error by considering his personal experiences and, further, that the trial court's finding that Clark completed only 80% of the work contracted for is unsupported by the record. Hunter responds that the judge is permitted to uti-

lize his own life experiences and that there was sufficient evidence to support the judgment. We agree with Hunter.

As an initial matter, in support of her position on appeal Hunter relies on *Jones.* The parties in *Jones,* the divorced parents of a deceased child, disputed the trial court's distribution of wrongful-death settlement proceeds. In finding a 65%–35% split appropriate, the trial judge explicitly relied on his personal life experiences of similar subjective circumstances. The *Jones* appellant argued that such reliance was improper, but we consolidated that argument with the appellant's additional argument that the judgment was unsupported by the evidence.

■ Here, Clark also raises and distinguishes those two arguments on the grounds that it was denied due process when the trial judge supposedly became an unconfronted witness. But we previously have held that "[a] trial court, like a jury, is entitled to take into consideration in weighing the evidence its own experience and the ordinary experiences in the lives of men and women." *Davoust v. Mitchell,* 146 Ind.App. 536, 541, 257 N.E.2d 332, 336 (1970). Regardless, here the judge's comments specify that he was applying his life experiences only to the evidence "as presented." Appellant's App. at 9. As such, as in *Jones* we consolidate the issues and address only whether the evidence supports the trial court's judgment.

■ As discussed above, there is ample evidence in the record that Clark did not complete its contractual obligations. Again, Keller testified that he

went through that ... contract ... and looked at ... all the wiring and devices, interior and exterior switches, and things of that nature, and listed the things which [he] found ... were either improperly installed or inadequate or were not complying with the [national electrical] code [as required under the contract].

Transcript at 133. Keller then testified to a number of contractual violations committed by Clark, including at least four acts of noncompliance with the National Electric Code. That evidence is sufficient to support the trial court's finding that Clark did not complete 100% of the work required under its contract.

■ Nonetheless, Clark asks that we reverse the trial court's judgment and "restore the 20% deducted from the amount owed," Appellant's Brief at 17, on the theory that there was no evidence before the trial court "that any particular *percentage* of the work was yet to be accomplished," *id.* at 12. However, given the evidence of Clark's uncompleted work[1] coupled with the evidence of the work Clark had completed, we cannot say that we are "firmly convinced that a mistake has been made" by the trial court's specific finding that Clark completed only 80% of its contractual obligations. *Hudson,* 852 N.E.2d at 989. As such, we cannot say that the trial court's finding on this issue is clearly erroneous.

### Issue Two: Prejudgment Interest

■ Second, Clark contends that the trial court erred in not assessing prejudgment interest on the award of dam-

---

1. Clark's argument in its Reply Brief that Hunter is estopped from raising Clark's "uncompleted" work as a defense because she prevented the completion of that work is unpersuasive. The trial court specifically found that Clark did not complete its contractual obligations, a finding supported by Keller's testimony. Clark's assertions to the contrary on appeal amount to a request that we reweigh the evidence, which we will not do. *See Jones,* 641 N.E.2d at 100.

ages. In support, Clark notes that "[t]he award of prejudgment interest is generally not a matter of discretion." Appellant's Brief at 16 (citing *Johnson v. Blankenship,* 679 N.E.2d 505, 509 (Ind.Ct.App.1997)). However, as we stated in *Harlan Sprague Dawley, Inc. v. S.E. Lab Group,* 644 N.E.2d 615, 617 (Ind.Ct.App.1994), *trans. denied:*

> [Appellant] HSD asks that we review de novo the trial court's award of prejudgment interest, based on language found in Indiana cases stating that "an award of prejudgment interest is generally not considered a matter of discretion." However, in previous cases we have reviewed the award of prejudgment interest under the abuse of discretion standard.
>
> The cases cited by HSD hold that prejudgment interest is not a matter of discretion only after the trial court determines that the damages can be ascertained by mathematical computation.

(Citations omitted.) In other words, "the award is proper where the trier of fact need not exercise its judgment to assess the amount of damages." *J.S. Sweet Co. v. White County Bridge Comm'n,* 714 N.E.2d 219, 225 (Ind.Ct.App.1999). And as we have further clarified:

> We note that the crucial factor in determining whether damages in the form of prejudgment interest are allowable is whether the damages were ascertainable in accordance with fixed rules of evidence and accepted standards of valuation. An award of prejudgment interest is proper only where a simple mathematical computation is required. Damages that are the subject of a good faith

dispute cannot allow for an award of prejudgment interest.

*Bopp v. Brames,* 713 N.E.2d 866, 872 (Ind. Ct.App.1999) (citations omitted), *trans. denied.*[2]

 Here, in determining the amount of damages Hunter owed Clark, the trial court was required to exercise its judgment to assess the amount of damages at 80% of the contract price. That judgment also reflects the good-faith nature of the dispute between Hunter and Clark. Again, "[d]amages that are the subject of a good faith dispute cannot allow for an award of prejudgment interest," *id.,* nor is such an award proper when the trial court must exercise its judgment to assess the amount of damages, *see J.S. Sweet Co.,* 714 N.E.2d at 225. Thus, the trial court did not err in not assessing prejudgment interest.

### Issue Three: Lien Foreclosure

In its order, the trial court stated that Clark's complaint alleged two counts, "Count 1 based on breach of contract and Count 2 on foreclosure of mechanic's lien." Appellant's App. at 9. However, while the trial court made specific findings on count one, it made no findings on count two. The trial court's decisions denying Clark's request to foreclose on its mechanic's lien and not to award attorney's fees are general judgments and will be affirmed upon any legal theory consistent with the evidence. *Jones,* 641 N.E.2d at 100.

Clark maintains that the trial court erred because, "having found that Clark was entitled to recover, the Court was obligated to foreclose the lien so that Clark could collect what was owed." Ap-

---

**2.** Clark's attempts to distinguish these cases in its Reply Brief are unpersuasive. Indeed, as Clark concedes, "in a contract case, if the trial court can determine the amount due from the evidence, without doing its own

evaluation, prejudgment interest is proper." Reply at 12. Clark's statement merely rephrases the standard announced in *J.S. Sweet Company.*

pellant's Brief at 14. In support, Clark argues that because it is undisputed that Clark brought itself within the scope of Indiana's mechanic's lien statute, that statute "should be liberally construed in order to accomplish the purposes of the statute." *Id.* at 13 (citing *Abbey Villas Dev. Corp. v. Site Contractors, Inc.*, 716 N.E.2d 91, 98 (Ind.Ct.App.1999)). *See also* Ind.Code § 32–28–3–1 to –18. Hunter responds that mechanic's liens are equitable in nature and, thus, since Clark recovered on its legal claim, the trial court need not have reached the equitable remedy. We must agree with Clark.

▮▮▮ Hunter's attempt to distinguish the legal and equitable principles behind Clark's complaint would defeat the remedy that the mechanic's lien statute provides. Indiana mechanic's liens are purely statutory creations and in derogation of the common law. *See Ford v. Culp Custom Homes, Inc.*, 731 N.E.2d 468, 472 (Ind.Ct.App.2000). The legislature has determined that, when labor or materials are provided to improve real estate, money damages, the remedy at law, are inadequate. Further, as we have stated, "[t]he necessary allegations to support an action to foreclose a mechanic's lien [include the requirement that] the complaint must show that [the] plaintiff had a contract to furnish the labor or materials with the owner of real estate, and that the work and materials were furnished under the contract." *Prewitt v. Londeree*, 141 Ind. App. 291, 216 N.E.2d 724, 733 (1966). *See also PCL/Calumet v. Entercitement, L.L.C.*, 760 N.E.2d 633, 637 (Ind.Ct.App. 2001). Of course, if the contract were paid in full, there would be no need to foreclose on the lien. Thus, to deny foreclosure on the theory that damages were awarded

would eviscerate the mechanic's lien statute.

It is undisputed by Hunter that Clark's lien is valid. Because the lien at issue here exists to secure payment of the debt the trial court found Hunter owed Clark, the trial court was required to order that the lien be foreclosed to comply with the statute. We therefore reverse the trial court's general judgment on the issue of foreclosure and remand with instructions that the trial court order sale of the property subject to the lien. *See* I.C. §§ 32–28–3–6(d), 32–33–9–1 to –8.[3] Insofar as there is a priority dispute on the lien between Clark and First Merchants Bank, N.A., we also remand that issue to the trial court for a determination.

**Issue Four: Attorney's Fees**

▮▮▮ Finally, Clark contends that the mechanic's lien statute mandates the award of attorney's fees upon foreclosure on the lien. Hunter responds that the relevant law, as amended, gives trial courts discretion in deciding whether to award attorney's fees. Again, we must agree with Clark.

Neither party disputes that this issue is controlled by the current version of Indiana Code Section 32–28–3–14(a), which states: "in an action to enforce a lien under this chapter, the plaintiff or lienholder *may* recover reasonable attorney's fees as a part of the judgment." (Emphasis added.) That statute is the 2002 recodification of former Indiana Code Section 32–8–3–14, which stated: "In all suits brought for the enforcement of any lien under the provisions of this chapter, if the plaintiff or lienholder shall recover judgment in any sum, he *shall* also be entitled to recover reasonable attorney's fees...."

---

**3.** We note, however, that Clark is required to give notice to Hunter at least thirty days before the sale, during which time Hunter may redeem the debt and extinguish the lien. *See* I.C. §§ 32–33–9–2, 32–33–9–3(b).

(Emphasis added.) Clark reconciles the change in statutory language from "shall" to "may" by pointing to the fact that "[n]o ... legislative history indicate[s] that a policy change was intended by the recodification." Appellant's Brief at 15.

While we understand Hunter's reasoning that the statutory shift in language from "shall" to "may" made an award of attorney's fees discretionary, we are obliged to agree with Clark on this issue. Indiana Code Section 1–1–4–1 sets forth the rules of statutory construction, stating in relevant part that "[t]he construction of all statutes of this state shall be by the following rules, *unless the construction is plainly repugnant to the intent of the legislature* or of the context of the statute: (1) Words and phrases shall be taken in their plain, or ordinary and usual, sense." (Emphasis added.) Undoubtedly, as stated by the dissent, the word "may" cannot mean "shall" in the plain, ordinary, or usual sense of those words. Nonetheless, that rule of statutory construction cannot apply if it would be plainly repugnant to the intent of the legislature. *See* I.C. § 1–1–4–1.

Here, the legislature has made clear its intent regarding the construction of the recodified property law. Indiana Code Section 32–16–1–1 to –9 specifically addresses the "Effect of Recodification by the Act of the 2002 Regular Session of the General Assembly." Notably, that part of the Indiana Code provides:

The recodification act of the 2002 regular session of the general assembly shall be construed as a recodification of prior property law. Except as provided in section 2(1) and 2(2) of this chapter, [regarding subsequent amendments and legislative history,] if the literal meaning of the recodification act of the 2002 regular session of the general assembly (including a literal application of an errone-ous change to an internal reference) would result in a substantive change in the prior property law, the difference shall be construed as a typographical, spelling, or other clerical error that must be corrected by:

(1) inserting, deleting, or substituting words, punctuation, or other matters of style in the recodification act of the 2002 regular session of the general assembly; or

(2) using any other rule of statutory construction;

as necessary or appropriate to apply the recodification act of the 2002 regular session of the general assembly in a manner that does not result in a substantive change in the law. *The principle of statutory construction that a court must apply the literal meaning of an act if the literal meaning of the act is unambiguous does not apply to the recodification act of the 2002 regular session of the general assembly to the extent that the recodification act of the 2002 regular session of the general assembly is not substantively identical to the prior property law.*

I.C. § 32–16–1–5 (emphasis added). In other words, even though the statutory shift from "shall" to "may" could indicate a different definition under the words' literal meanings, such a difference has been expressly barred by the legislature if it would result in a substantive change in the law. *See also Burd Mgmt., L.L.C. v. State,* 831 N.E.2d 104, 108 (Ind.2004).

Under the prior property law, if a mechanic's lienholder recovered judgment "in any sum" he was entitled to recover reasonable attorney's fees. *Clark's Pork Farms v. Sand Livestock Systems, Inc.,* 563 N.E.2d 1292, 1300 (Ind. Ct.App.1990). Further, those fees are part of the lienholder's in rem judgment. *See Potter v. Cline,* 161 Ind.App. 349, 316

N.E.2d 422, 431 (1974). The same law applies under the recodified property statutes. Here, Clark recovered a judgment in the amount of $2,952. Thus, Clark was entitled to recover reasonable attorney's fees. During the trial, Clark presented uncontroverted evidence that it had incurred attorney's fees in the sum of $3,109.20. Hunter does not object to the reasonableness of Clark's fees on appeal. Hence, Clark is entitled to a judgment in that amount.[4]

## Conclusion

We hold that the evidence supports the judgment on Clark's breach of contract claim, and that the trial court did not err in denying Clark prejudgment interest. However, we reverse the trial court's denial of Clark's request for foreclosure on the lien and attorney's fees. On those issues, we remand to the trial court with instructions that the lien's priority be determined, that a judgment for attorney's fees be entered for Clark in the amount of $3,109.20, and that a decree of foreclosure be entered to satisfy both the $2,952 owed on the contract and $3,109.20 in attorney's fees.

Affirmed in part, reversed in part, and remanded with instructions.

MAY, J., concurs.

MATHIAS, J., concurs in part and dissents in part with separate opinion.

MATHIAS, Judge, concurring in part and dissenting in part,

I concur fully with the majority's opinion regarding the sufficiency of evidence, the prejudgment interest, and the foreclosure on the mechanic's lien. However, I write separately as I must respectfully dissent in part from the majority's conclusion that Indiana Code section 32–38–3–14(a) requires an award of attorney's fees when the plaintiff recovers any judgment brought for the enforcement of a mechanic's lien.

Because Indiana adheres to the "American Rule," meaning that each party pays for his or her own attorney's fees absent an agreement or statutory authority to the contrary, statutes that vary from this common law rule must be strictly construed. *Vasquez v. Phillips*, 843 N.E.2d 61, 64 (Ind.Ct.App.2006). "We presume that 'the legislature did not intend by statute to make any change in the common law beyond what it declares either in express terms or by unmistakable implication.'" *Courter v. Fugitt*, 714 N.E.2d 1129, 1132 (Ind.Ct.App.1999) (quoting *Chavis v. Patton*, 683 N.E.2d 253, 258 (Ind.Ct.App. 1997)).

Indiana Code section 32–38–3–14(a) presently reads "in an action to enforce a lien under this chapter, the plaintiff or lienholder *may* recover reasonable attorney's fees as a part of the judgment." (Emphasis added.) The word "may" cannot mean "shall" any more than "black" can mean "white," despite Indiana Code section 32–16–1–5. We cannot expect Hoosiers to respect our laws if they cannot be understood to mean what they plainly say on their face. I therefore urge the General Assembly to correct or affirm this important change as soon as possible.

For these reasons, I would affirm the trial court's exercise of discretion on the issue of attorney's fees.

4. In its Reply Brief, Clark requests additional fees for the costs of appeal. However, "an argument raised for the first time in a reply brief is waived." *U.S. Gypsum, Inc. v. Ind. Gas Co.*, 735 N.E.2d 790, 797 (Ind.2000).